IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ISIDRO ANDRADE-TAFOLLA**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Defendant. | Case No. 3:20-cv-01361-IM <br><br> **OPINION AND ORDER** |

Caitlin Van Tassel Mitchell and Jennifer J. Middleton, Johnson, Johnson, Lucas & Middleton, 975 Oak Street, Suite 1050, Eugene, OR 97401. Attorneys for Plaintiff.

Dianne Schweiner, Assistant United States Attorney, United States Attorney's Office, 1000 SW 3rd Ave., Suite 600, Portland, OR 97204. Attorney for Defendant.

**IMMERGUT, District Judge.**

This matter comes before this Court on Defendant United States of America's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ECF 10. Plaintiff Isidro Andrade-Tafolla brings two claims against Defendant under the Federal Torts Claims Act ("FTCA"): (1) false arrest/imprisonment, and (2) negligent arrest. ECF 1 at 6–7. Defendant moves to dismiss Plaintiff's Complaint on two grounds. First, Defendant argues that both of Plaintiff's claims must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)

because the claims are barred by the discretionary function exception to the FTCA. ECF 10 at 3, 10–14. Second, Defendant argues that Plaintiff's negligent arrest claim must be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because negligent arrest is not an authorized cause of action under the FTCA or Oregon law. *Id*. at 3, 14–16.

On April 27, 2021, this Court held a hearing on Defendant's motion. For the reasons discussed below, Defendant's motion to dismiss both of Plaintiff's claims as barred by the discretionary function exception to the FTCA is denied and Defendant's motion to dismiss Plaintiff's negligent arrest claim as an unauthorized cause of action under Oregon law is granted.

## BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint, ECF 1. Plaintiff Isidro Andrade-Tafolla is a United States citizen who has lived with his family in Washington County, Oregon, since 1984. ECF 1 at ¶ 1. On September 18, 2017, Plaintiff accompanied his wife, Renee Selden-Andrade, to the Washington County Courthouse in Hillsboro, Oregon. *Id.* at ¶ 7. Ms. Selden-Andrade had a court appearance on the 8:30 a.m. DUII diversion docket. *Id*.

Plaintiff and Ms. Selden-Andrade parked their pick-up truck and walked to the courthouse. *Id*. at ¶ 8. A crowd of people stood outside protesting U.S. Immigration and Custom Enforcement's (ICE) practice of conducting immigration stops and arrests in and around the courthouse. *Id*. Plaintiff and Ms. Selden-Andrade entered the building and stood outside the courtroom waiting for Ms. Selden-Andrade's attorney. *Id*. Two ICE agents were also standing in the hallway. *Id*. The ICE agents were looking for an individual whose first name was Arturo. *Id*. at ¶ 9.

Plaintiff and Ms. Selden-Andrade, along with others on the 8:30 a.m. DUII diversion docket, entered the courtroom. *Id*. at ¶ 10. The ICE agents entered the courtroom and sat down a few rows behind Plaintiff. *Id*. The agents stared at Plaintiff. *Id*.

PAGE 2 – OPINION AND ORDER

Each person listed on the 8:30 a.m. docket was called by name. *Id*. A man named Arturo was called by name, he was present, and the court granted him diversion.[1] *Id*. at ¶ 11. Ms. Selden-Andrade's name was also called, and her hearing was reset. *Id*. at ¶ 12.

Plaintiff and Ms. Selden-Andrade left the courtroom and the agents followed. *Id*. After stopping in the hallway to speak with Ms. Selden-Andrade's attorney, Ms. Selden-Andrade and Plaintiff exited the courthouse. *Id*.

As Plaintiff and Ms. Selden-Andrade walked toward their pick-up truck, an unmarked minivan drove past and parked directly in front of their vehicle in an area not designated for parking. *Id*. at ¶ 13. The two ICE agents from the courtroom exited the minivan and approached Plaintiff, who stood at the driver's side of the truck. *Id*. The agents stood in front of Plaintiff, who was backed up against the pick-up truck. *Id*. at ¶ 14. One agent asked Plaintiff for his name. *Id*. She demanded identification but did not identify herself to Plaintiff, even after he and Ms. Andrade-Tafolla asked repeatedly who she was. *Id*.

A legal observer from the American Civil Liberties Union, who was filming the encounter, asked, "Do you have a warrant? Are you ICE? Do you have a warrant for his arrest?" *Id*. at ¶ 15. The agents did not answer. *Id*.

---

[1] Plaintiff requests that this Court take judicial notice of the Register of Actions for State of Oregon vs Arturo Garcia-Ramirez. ECF 19. Defendant does not oppose the request. *Id*. This Court may take judicial notice of information that "is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court must take judicial notice if a party requests it and the court is supplied with the necessary information. Fed. R. Evid. 201(c)(2). Information made publicly available on the internet by government entities is subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010). The Register of Actions for State of Oregon vs Arturo Garcia-Ramirez was made publicly available on the internet by the Oregon Judicial Department. Accordingly, Plaintiff's Motion for Judicial Notice, ECF 19, is GRANTED.

One of the ICE agents showed Plaintiff a mugshot on her phone and said, "This picture right here? That's you." *Id*. at ¶ 17. Ms. Selden-Andrade explained that the man in the mugshot was not her husband. *Id*. The agent demanded identification from Plaintiff. *Id*.

Two more unmarked vehicles drove up and positioned themselves around Plaintiff's truck, blocking him in. *Id*. at ¶ 18. One agent exited his vehicle and joined the two already standing near Plaintiff. *Id*. Another agent retrieved what appeared to be a badge as well as a dark object, which he put into the pocket of his pants. *Id*. The ACLU observer asked whether the agent was getting his gun. *Id*.

Three more agents approached Plaintiff and Ms. Selden-Andrade from the other side, physically surrounding them. *Id*. at ¶ 19. One agent was wearing a shirt that said "ICE." Another agent's badge was visible. *Id*.

One of the newly arrived agents approached the agent who had claimed to have a mugshot of Plaintiff on her phone. *Id*. at ¶ 20. He looked at the phone and said, "It's not him, let's get out of here." *Id*. The agents got into their vehicles and drove away. *Id*.

## STANDARDS

**Fed. R. Civ. P. 12(b)(1)**

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A federal court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A jurisdictional attack brought under Rule 12(b)(1) may be either facial or factual. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on subject

PAGE 4 – OPINION AND ORDER

matter jurisdiction is based on the assertion that the allegations in the complaint are insufficient to invoke federal jurisdiction. *Id*. In a factual attack, the movant disputes the truth of allegations that otherwise would give rise to federal jurisdiction. *Id*. In resolving a factual attack on jurisdiction, a court may consider evidence extrinsic to the complaint and normally need not presume the truthfulness of the plaintiff's allegations. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone*, 373 F.3d at 1039. If the moving party presents evidence demonstrating a lack of subject matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient to establish subject matter jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039.

However, a court may not resolve genuinely disputed facts on a motion to dismiss under 12(b)(1) "where jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Sun Valley Gasoline, Inc. v. Ernst Enter., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (internal quotation marks and citation omitted). "In such a case, the district court assumes the truth of the allegations in a complaint . . . unless controverted by undisputed facts in the record." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

**Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint

and construe them in the light most favorable to the non-moving party. *See Daniels-Hall*, 629 F.3d at 998. To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

## DISCUSSION

**A. Defendant's Motion to Dismiss Claims 1 and 2 under Fed. R. Civ. P. 12(b)(1)**

Defendant first argues that both of Plaintiff's claims must be dismissed under Rule 12(b)(1) because the FTCA's discretionary function exception deprives this Court of subject matter jurisdiction. ECF 10 at 3, 10–14.

1. **The Federal Torts Claim Act**

The United States can be sued only to the extent that it has waived its sovereign immunity. *Conrad v. United States*, 447 F.3d 760, 764 (9th Cir. 2006). The FTCA, 28 U.S.C. § 2671, *et seq.*, provides a limited waiver of sovereign immunity, making the United States liable for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Where the FTCA applies, the United States may be liable for certain torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. "Liability is determined by the tort law of the state where the claim arose." *Gasho v. United States*, 39 F.3d 1420, 1427 (9th Cir. 1994).

   a. **The Law Enforcement Proviso**

Generally, the FTCA does not waive sovereign immunity for intentional tort claims. *See* 28 U.S.C. § 2680(h). However, "[i]n 1974, Congress carved out an exception to § 2680(h)'s preservation of the United States' sovereign immunity for intentional torts by adding a proviso covering claims that arise out of the wrongful conduct of law enforcement officers" acting within the scope of their employment. *Millbrook v. United States*, 569 U.S. 50, 52 (2013). "Known as the 'law enforcement proviso,' this provision extends the waiver of sovereign immunity to claims for six intentional torts, including [false arrest and false imprisonment], that are based on the 'acts or omissions of investigative or law enforcement officers.'" *Id*. at 52–53 (quoting 28 U.S.C. § 2680(h)). The proviso defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Immigration officials are investigative or law enforcement officers for the purposes of the FTCA. *Caban v. United States*, 671 F.2d 1230, 1234–35 (2d Cir. 1982).

"On its face, the law enforcement proviso applies where a claim both arises out of one of the proviso's six intentional torts [assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution], and is related to the 'acts or omissions' of an 'investigative or law enforcement officer'" who is "acting within the scope of his office or employment." *Millbrook*, 569 U.S. at 54–55 (quoting 28 U.S.C. § 1346(b)).

### b. The Discretionary Function Exception

The United States' "broad waiver of sovereign immunity [under the FTCA] is subject to a number of exceptions set forth in § 2680." *Id.* at 52. "If an exception applies, sovereign immunity is not waived, and no subject matter jurisdiction exists." *Gen'l Dynamics Corp. v. United States*, 139 F.3d 1280, 1283 (9th Cir. 1998). In the Ninth Circuit, "the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity." *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

The discretionary function exception to the waiver of sovereign immunity under the FTCA precludes claims against the United States which are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception is designed to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted); *see also Gasho*, 39 F.3d at 1435 ("[A]n act is shielded from liability [under the discretionary function exception] if judicial second-guessing would interfere with the federal employee's exercise of independent policy judgments").

"Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002). Courts engage in a two-step inquiry to determine if the exception applies. *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988). "First, for the exception to apply, the challenged conduct must be discretionary—that is, it must involve an element of judgment or choice." *GATX*, 286 F.3d at 1173. "In general, governmental conduct cannot be discretionary if it violates a legal mandate." *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000). Second, "[i]f the conduct involves choice or discretion, the court must then 'determine whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *GATX*, 286 F.3d at 1174 (quoting *Berkovitz*, 486 U.S. at 536). The focus is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

### c. Interaction of Discretionary Function and Law Enforcement Proviso

The Ninth Circuit has held that the liability created by the law enforcement proviso is subject to the FTCA's discretionary function exception. *Gasho*, 39 F.3d at 1435. "If a defendant can show that the tortious conduct involves a 'discretionary function,' a plaintiff cannot maintain an FTCA claim, even if the discretionary act constitutes an intentional tort under section 2680(h)." *Id*.

### 2. Analysis

Defendant brings a factual attack challenging the Court's subject matter jurisdiction. ECF 10 at 10–14. In support of its jurisdictional challenge, Defendant submitted extrinsic evidence to argue that the conduct at issue in this case falls under discretionary function exception. *Id*. at 7–8, 12–14.

As explained above, this Court must assess the "nature of the conduct" at the heart of Plaintiff's claims to determine whether the discretionary function exception bars relief. *Gaubert*, 499 U.S. at 322. Because an assessment of whether the discretionary function exception applies requires a particularized analysis of the conduct at the center of Plaintiff's substantive claims, this Court may not resolve genuine disputes of fact raised by Defendant's extrinsic evidence at this stage. *See Sun Valley Gasoline, Inc.*, 711 F.2d at 139 (A court may not resolve genuinely disputed facts on a motion to dismiss under 12(b)(1) "where jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action."). Rather, this Court must assume the truth of the allegations in the Complaint unless they are "controverted by undisputed facts in the record." *Roberts*, 812 F.2d at 1177.

Defendant submits a YouTube video documenting part of Plaintiff's encounter with the ICE agents, two blurry photographs of Plaintiff captured from the YouTube video, and two low-resolution mugshots of Arturo, the man the agents had come to the Washington County Courthouse looking for. ECF 10 at 9; ECF 11; ECF 14. The video does not capture the beginning of Plaintiff's interaction with the agents and provides only a snapshot of the events described in the Complaint. This Court finds that the video does not appear to show the agents acting aggressively or blocking Plaintiff from walking away. However, it does support Plaintiff's allegation that his truck was blocked in by the agents' vehicles and it does not capture enough of the interaction to undermine Plaintiff's allegations that he did not feel free to terminate the encounter. As for the photographs and mugshots, Defendant does not cite these pieces of evidence in its motion or identify how they undermine the jurisdictional facts in Plaintiff's Complaint. Thus, Defendant has not controverted Plaintiff's allegations with undisputed

evidence and this Court must assume the truth of the allegations in the Complaint when assessing the challenge to subject matter jurisdiction.[2]

The conduct which forms the basis of both Plaintiff's false arrest and false imprisonment claim and negligent arrest claim is the agents' alleged unlawful confinement of Plaintiff.[3] ICE agents, like all law enforcement officers, must comply with the Fourth Amendment. *Sanchez v. Sessions*, 904 F.3d 643, 651 (9th Cir. 2018). Under the Fourth Amendment, ICE agents "may not stop and briefly detain a person for investigative purposes … unless they have reasonable suspicion supported by articulable facts that criminal activity may be afoot." *Id*. (internal quotation marks and citations omitted). ICE agents are also required to comply with 8 C.F.R. § 287.8, which reflects the Fourth Amendment's restrictions. *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019) (noting immigration enforcement regulatory standards are at least as stringent as the Fourth Amendment).

Because "governmental conduct cannot be discretionary if it violates a legal mandate," law enforcement action that offends the Fourth Amendment is not protected by the discretionary function exception. *Nurse*, 226 F.3d at 1002. In *Nurse*, the plaintiff, a black Canadian woman, brought claims against the United States, including false imprisonment and negligence claims,

---

[2] Plaintiff submitted two declarations in response to Defendant's factual attack of subject matter jurisdiction. ECF 22; ECF 23. As explained above, a court may consider extrinsic evidence in resolving a factual attack on jurisdiction. However, because this Court finds the allegations in the Complaint sufficient to survive Defendant's jurisdictional challenge, it declines to consider the declarations at this stage.

[3] Under Oregon law, "[t]he torts of false arrest and false imprisonment have the same four elements: (1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Fossen v. Clackamas County*, 271 Or. App. 842, 847 (2015) (internal quotation marks and citations omitted). Plaintiff's negligent arrest claim alleges that "the ICE agents negligently confined and interrogated" Plaintiff. ECF 1 at ¶ 26.

PAGE 11 – OPINION AND ORDER

based on acts of United States Customs Service agents at Los Angeles International Airport (LAX). *Id.* at 999–1001. The plaintiff alleged that Customs agents at LAX had detained, arrested, and searched her without either probable cause or reasonable suspicion, and that they had discriminated against her based on race. *Id.* Citing cases holding that seizures by law enforcement do not implicate policy considerations, the Ninth Circuit held that the plaintiff had successfully stated a claim because her claims fell within the FTCA's law enforcement proviso and the challenged conduct did "not appear to be protected by the discretionary function exception." *Id.* at 1002. Here, accepting as true the material facts alleged in Plaintiff's Complaint and construing them in the light most favorable to Plaintiff, this Court finds that, like the plaintiff in *Nurse*, Plaintiff has successfully stated a claim that is not barred by the discretionary function exception because the ICE agents' alleged conduct violated the Fourth Amendment and 8 C.F.R. § 287.8.

To determine whether law enforcement actions constitute a Fourth Amendment seizure, courts ask whether "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Orhorhaghe v. I.N.S.*, 38 F.3d 488, 494 (9th Cir. 1994) (internal quotation marks and citation omitted). Importantly, "[e]ven if the official interference … is brief, provided that it is some sort of 'meaningful interference . . . with an individual's freedom of movement,' it constitutes a seizure." *United States v. Enslin*, 327 F.3d 788, 795 (9th Cir. 2003) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984)).

In *Orhorhaghe*, the Ninth Circuit found that a seizure had occurred where four law enforcement officers aggressively questioned the plaintiff in the hallways of his apartment building. 38 F.3d at 493–96. One of the officers initiated the encounter by identifying himself

and displaying his badge while the other three positioned themselves in a way which "narrowed [the plaintiff's] avenues of potential escape within the apartment hallway." *Id*. at 491. One agent then put his hand on his hip in a manner which revealed he was carrying a gun. *Id*. at 495. The agent "acted in an officious and authoritative manner that indicated that [the plaintiff] was not free to decline his requests" by, among other things, "instructing" the plaintiff to take the officers to the plaintiff's apartment. *Id*. "The tenor of [that] instruction," the Court explained, "was not that of 'every citizen' addressing questions to fellow citizens; it was brusque and authoritative," and more of a "command" than a request. *Id*. at 496. The agents did not advise the plaintiff that he was free to decline their instructions and to terminate the encounter, which further weighed in favor of a finding of a seizure. *Id*.

Here, taking the factual allegations in the Complaint as true, this Court finds that the ICE agents' conduct towards Plaintiff constituted a seizure. Although the ICE agents did not identify themselves as federal law enforcement, their alleged actions would have communicated to a reasonable person that he was not at liberty to ignore their presence and go about his business. The Complaint alleges that as he was being questioned about his identity in an accusatory manner, Plaintiff was physically surrounded by six agents and his truck was blocked in by two of the agents' vehicles. ECF 1 at ¶ 14–19. One of the agents surrounding Plaintiff wore a shirt that said "ICE" and another agent's badge was visible. *Id*. at ¶ 19. Plaintiff may also have been given the impression that one of the agents was armed after an ACLU observer loudly asked whether the agent was getting his gun. *Id*. at ¶ 18. Further, none of the agents advised Plaintiff that he was free to decline their requests for identification and terminate the encounter. As in *Orhorhaghe*, the authoritative tone used to question Plaintiff combined with the allegations that six agents surrounded him while their vehicles blocked in his truck support a finding that a reasonable

person in Plaintiff's position would feel that he was not at liberty to ignore the agents' presence and go about his business.

To be clear, this Court does not find that the agents' acts of approaching Plaintiff and requesting identification alone violated the Fourth Amendment. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."). Rather, it finds that under the totality of the circumstances as alleged in the Complaint, a reasonable person would not have felt at liberty to ignore the agents and terminate the interaction. While Defendant disputes some of Plaintiff's characterizations of the facts, it has failed to proffer undisputed evidence controverting Plaintiff's allegations. Therefore, this Court must resolve any factual disputes in Plaintiff's favor at this stage. *Roberts*, 812 F.2d at 1177. Viewed in this light, Plaintiff's Complaint sufficiently alleges law enforcement conduct rising to the level of a seizure.

The Complaint also successfully alleges that the agents' seizure of Plaintiff was unsupported by reasonable suspicion. The Complaint alleges that the two ICE agents who initiated the encounter with Plaintiff were in the courtroom during the DUII diversion hearing. ECF 1 at ¶ 10–11.[4] At the hearing, Arturo, the man Defendant claims the agents mistook Plaintiff for, had his name called, was present, and was granted diversion by the court. *Id*. at ¶ 11. Taking the factual allegations in the Complaint as true leads to the conclusion that the agents had no articulable reason to believe that Plaintiff was Arturo. Further, even assuming that the ICE agents reasonably mistook Plaintiff for Arturo, no evidence in the record indicates whether the agents

---

[4] Defendant asserts that the agents "were forced to leave the courtroom before witnessing anyone's actual hearing due to the danger presented by the large group of protesters gathered outside the courtroom." ECF 10 at 3. However, Defendant provides no evidence to support that statement.

had reasonable suspicion to detain Arturo. Whether the agents' seizure of Plaintiff was supported by reasonable suspicion, whether the agents mistook Plaintiff for Arturo, and whether the agents had reasonable suspicion to detain Arturo are questions which require factual development and cannot be properly resolved at this stage of proceedings. Accordingly, this Court finds that the Complaint successfully alleges that the agents briefly seized Plaintiff without reasonable suspicion in violation of the Fourth Amendment and 8 C.F.R. § 287.8.[5]

In short, taking Plaintiff's claims as true, this Court finds that the discretionary function exception to the FTCA does not protect the ICE agents' conduct. Plaintiff's allegations mirror those in *Nurse*, where the Ninth Circuit found that the discretionary function exception did not bar the plaintiff's allegations that customs agents stopped her without reasonable suspicion. 226 F.3d at 1002 n.2 ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply."). Accordingly, Defendant's Motion to Dismiss Plaintiff's claims as barred by the discretionary function exception is denied.

**B. Defendant's Motion to Dismiss Claim 2 under 12(b)(1) and 12(b)(6)**

Next, Defendant argues that Plaintiff's negligent arrest claim should be dismissed because "there is no such action under Oregon law." ECF 10 at 14–16. Under the FTCA, the

---

[5] Plaintiff argues that, in addition to violating the Fourth Amendment and 8 C.F.R. § 287.8, the agents' actions were not discretionary because they violated the common law privilege against civil arrest of individuals attending court. ECF 21 at 19–21. However, the privilege has historically only prohibited the civil arrest of persons "necessarily attending any court of record upon business." 3 William Blackstone, *Commentaries on the Laws of England* 289 (1768). Oregon's codification of the privilege only prohibits the civil arrest of *subpoenaed* individuals going to and from court. *See* Or. Rev. Stat. Ann. § 44.090 (West). Here, Plaintiff accompanied his wife to her court date. Plaintiff's attendance was not required, nor was it pursuant to a subpoena or any other official business. Plaintiff has cited no authority to support the proposition that the privilege against civil arrest extends to those choosing to attend court proceedings to support family members. Thus, this Court rejects Plaintiff's argument that the agents' alleged conduct violated the privilege against civil arrest.

United States is only liable for the negligent acts of its employees to the extent that a private individual would be liable under like circumstances. 28 U.S.C. § 2674. "Liability is determined by the tort law of the state where the claim arose." *Gasho*, 39 F.3d at 1427. Therefore, the United States is liable for tort claims sounding in negligence only if those torts are actionable under the law of the state where they occurred. *Ting v. United States*, 927 F.2d 1504, 1513 (9th Cir. 1991).

Plaintiff argues that the Oregon Court of Appeals implicitly recognized negligent arrest as a cause of action in *Murphy v. City of Portland*, 36 Or. App. 745 (1978). ECF 21 at 22–23. In *Murphy*, the plaintiff sued Multnomah County and individual law enforcement officers for negligently causing his arrest by linking his identifying information to a warrant for a different person with the same name in the warrant database. *Id*. at 745 n.1. The database contained information on both people that would have distinguished them, but the county warrant clerk failed to check the database for matching names. *Id*. at 749. Finding that the record was unclear as to whether the defendants were protected by discretionary immunity, the Court of Appeals reversed summary judgment. *Id*. The *Murphy* court never addressed whether "negligent arrest" is a recognized claim under Oregon law. Further, *Murphy* concerned the actions of law enforcement, not private individuals. Even assuming *Murphy* implies that law enforcement officials may be held liable for negligent arrest under Oregon law, it does not speak to whether private individuals could be held liable in the same manner. As stated above, the FTCA waives immunity for the negligent acts of its employees only to the extent that a private individual would be liable under like circumstances.[6] 28 U.S.C. § 2674.

---

[6] In *Copeland v. K Mart Corp.*, 1998 WL 560759, at *5 (9th Cir. 1998), the Ninth Circuit found that while "Oregon has not specifically recognized a claim for negligent arrest," *Murphy* represents an implicit recognition of such a cause of action. *Copeland* is an unpublished opinion with no precedential value. However, even there, the Ninth Circuit upheld a grant of summary judgment for the defendant, finding that a private citizen could not be liable in negligence

Indeed, Plaintiff has failed to identify any Oregon cases where a private individual has been held liable for negligent arrest. In line with prior decisions, this Court declines to create a cause of action for negligent arrest under Oregon law absent stronger evidence that such a claim exists. *See Johnson v. Clackamas Cty.*, 2008 WL 1909167, at *8 (D. Or. Apr. 28, 2008) ("false arrest is an intentional tort under Oregon law, and, therefore, Plaintiff cannot state a claim for false arrest as a negligence claim."); *Dental v. City of Salem/Salem Police Dep't*, 2015 WL 1524476, at *6 (D. Or. Apr. 2, 2015) (finding that the "dicta" cited by the plaintiff to argue that negligent arrest is a recognized action under Oregon law provided "marginal – if any – support for [that] proposition.").

Accordingly, Defendant's Motion to Dismiss the negligent arrest claim as an unauthorized cause of action is granted.

## C. Attorney's Fees

Finally, Defendant argues that Plaintiff's request for attorney's fees in the Complaint must be stricken because the United States has not waived immunity for the recovery of fees in an action under the FTCA. ECF 10 at 16. Plaintiff agrees his prayer for attorney's fees may be stricken. ECF 21 at 25. Accordingly, Plaintiff's request for attorney's fees is stricken.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's motion to dismiss both of Plaintiff's claims as barred by the discretionary function exception to the FTCA. The Court GRANTS Defendant's motion to dismiss Plaintiff's negligent arrest claim as an unauthorized

---

because a "citizen owes no duty to investigate the circumstances" before instigating an arrest. *Id*. at *4.

cause of action under Oregon law. Further, Plaintiff's Motion for Judicial Notice, ECF 19, is GRANTED and Plaintiff's request for attorney's fees is STRICKEN from the Complaint.

**IT IS SO ORDERED**.

DATED this 3rd day of May, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge