## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ISIDRO ANDRADE-TAFOLLA**, | Case No. 3:20-cv-01361-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **UNITED STATES**, | |
| Defendant. | |

Caitlin Van Tassel Mitchell, Jennifer J. Middleton, Johnson, Johnson, Lucas & Middleton, PC, 975 Oak Street, Suite 1050, Eugene, OR 97401; Jessica Lynn Battle, Leland Baxter-Neal, ACLU of Oregon, 506 SW 6th Avenue, Suite 700, Portland, OR 97204. Attorneys for Plaintiff.

Dianne Schweiner, United States Attorney's Office, SW Third Avenue, Suite 600, Portland, OR 97204. Attorney for Defendant.

**IMMERGUT, District Judge.**

This matter comes before the Court on Plaintiff Isidro Andrade-Tafolla's Motion to

Compel Production of Documents,[1] ECF 42. For the following reasons, Plaintiff's Motion to

---

[1] The parties neglected to include copies of Plaintiff's requests for production ("RFP"). However, Plaintiff lists the discovery requests in his Motion to Compel. ECF 42 at 3–4.

Compel is DENIED.

## BACKGROUND

This is a Federal Tort Claims Act case in which Plaintiff asserts a claim of false arrest and imprisonment against the United States. On September 18, 2017, six United States Immigration and Customs Enforcement ("ICE" or "the Agency") agents stopped Plaintiff and his wife, both United States citizens, as they were attempting to get into their truck outside the Washington County Courthouse in Hillsboro, Oregon. ECF 42 at 2. Plaintiff claims that agents surrounded him, boxed in his truck with their vehicles, told him that they had his mugshot, and demanded identification. *Id.* The agents did not have a warrant for Plaintiff's arrest, but were instead searching for a person named Arturo Garcia-Ramirez. *Id.* Plaintiff alleges that the agents' stop was an instance of racial profiling. *Id.*

Plaintiff served requests for production relating to draft memoranda and communications about the incident. Specifically, Plaintiff seeks the drafts of memoranda prepared by the officers at the scene (RFP No. 1); communications concerning the stop between high-level officials within the Agency—including the Acting Field Office Director, the Assistant Field Office Director (Anchorage & Portland CAP/VCAS), the Western Regional Communications Director/Spokesperson, the Public Affairs Officer/Spokeswoman, and the Community Relations Officer (RFP No. 2); and communications with third parties after the alleged incident—including media outlets, politicians, and community organizations (RFP No. 5). *Id.* at 3–4. Plaintiff also seeks, in the alternative, an *in camera* review of particular unredacted documents. *Id.* at 10.

## STANDARDS

**A. Relevance and Proportionality Under Rule 26**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule

26(b)(1) identifies several factors to be considered when evaluating proportionality including:

"the importance of the issues at stake in the action, the amount in controversy, the parties'

relative access to relevant information, the parties' resources, the importance of the discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

likely benefit." *Id.* Relevance under Rule 26(b)(1) is defined broadly. *See Snipes v. United*

*States*, 334 F.R.D. 548, 550 (N.D. Cal. 2020). Moreover, "[i]nformation within this scope of

discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"Generally, the purpose of discovery is to remove surprise from trial preparation so the parties

can obtain evidence necessary to evaluate and resolve their dispute." *Duran v. Cisco Sys., Inc.*,

258 F.R.D. 375, 378 (C.D. Cal. 2009) (internal quotation marks and citation omitted).

**B. Work-Product Doctrine**

Under Federal Rule of Civil Procedure 26(b)(1), parties may discover any unprivileged

information that is relevant to any party's claim or defense and proportional to the needs of the

case. Fed. R. Civ. P. 26(b)(1). Pre-trial discovery is "accorded a broad and liberal treatment."

*Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (internal quotation marks omitted) (quoting

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The work-product doctrine "is not a privilege but

a qualified immunity protecting from discovery documents and tangible things prepared by a

party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Court for*

*Dist. of Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3)).

The Ninth Circuit has adopted the "because of" standard for determining whether a

document was prepared "in anticipation of litigation." *See In re Grand Jury Subpoena (Mark*

*Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). A document should be deemed in

anticipation of litigation if "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *Id.* (internal quotation marks omitted) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2024 (2d ed. 1994)).

That said, work product may be discovered if the seeking party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "[T]he party asserting protection under the work-product doctrine generally has the burden to show that the elements of the doctrine have been established." *McKenzie L. Firm, P.A. v. Ruby Receptionists, Inc.*, 333 F.R.D. 638, 641 (D. Or. 2019).

## C. Deliberative Process Privilege

The deliberative process privilege protects "the decision making processes of government agencies" in order to "prevent injury to the quality of agency decisions." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–51 (1975) (internal quotation marks and citations omitted). To fall within the protection of the deliberative process privilege, a document must be both (1) predecisional, and (2) deliberative. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). A document is predecisional if it was "prepared in order to assist an agency decisionmaker in arriving at his decision." *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 921 (9th Cir. 1992) (internal quotation marks omitted) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). A document is deliberative if "disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.* (quoting *Dudman Commc'ns Corp. v. Dep't of the Air Force,* 815

F.2d 1565, 1568 (D.C. Cir. 1987)).

"The burden of establishing application of the deliberative process privilege is on the party asserting it." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1019 (E.D. Cal. 2010). Finally, even where the privilege is properly asserted, it is not absolute, and the court must determine whether the need for the evidence overrides the government's interest in non-disclosure. *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

## DISCUSSION

Plaintiff seeks documents that are responsive to RFP Nos. 1, 2, and 5. This Court finds that the documents responsive to RFP Nos. 1 and 2 are protected from disclosure under the work-product doctrine and deliberative process privilege.[2] The documents responsive to RFP No. 5 refer to communications with specific third parties and are not discoverable under Rule 26(b)(1).

## A. RFP Nos. 1 and 2 Are Protected Under the Work-Product Doctrine

This Court finds that the work-product doctrine applies to the documents responsive to RFP Nos. 1 and 2. To qualify for work-product protection, materials must: "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (internal quotation marks and citation omitted).

Plaintiff argues that the work-product doctrine is inapplicable here because Agency representatives were not under the impression that potential litigation was on the horizon. ECF 42 at 9. Specifically, Plaintiff claims that communications between ICE's Acting Field Office

---

[2] This Court finds that an analysis of Defendant's assertion of the "law enforcement sensitive privilege" would not affect its conclusions. ECF 47 at 12–13. Accordingly, this Court declines to address these arguments.

Director and Western Regional Communications Director/Spokesperson show that ICE had not received a complaint and that it was "not looking into" the incident. *Id.* However, Plaintiff appears to take these statements out of context. The statement from the Acting Field Office Director that the agency was "not looking into" the incident was in response to specific media inquiries about racial profiling. *See* ECF 43 at 16. Because, in the Agency's view, no racial profiling had occurred, it answered in the negative. *See* ECF 47 at 8. Plaintiff's apparent misunderstanding of this statement does not provide any evidence that the Agency was somehow unaware of the ensuing controversy and the potential of legal action.

This Court must evaluate not only the individual motives "that contributed to a document's preparation" but also the "circumstances surrounding the document's preparation." *In re Grand Jury Subpoen*a, 357 F.3d at 908. Plaintiff's argument is undercut by several facts in the record which demonstrate that the Agency was on notice that legal action was more than just hypothetical in nature. *See Heath v. F/V Zolotoi*, 221 F.R.D. 545, 549 (W.D. Wash. 2004) ("More than the mere possibility of litigation must be evident for materials to be considered immune from discovery under the work-product doctrine." (internal quotation marks omitted) (quoting *Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y. 1982)); *Fox v. Cal. Sierra Fin. Servs.*, 120 F.R.D. 520, 524 (N.D. Cal. 1988) ("There is no requirement that the litigation have already commenced in order for the work-product doctrine to be operative, however, there must be more than a remote possibility of litigation.").

During the incident itself, a legal observer from the American Civil Liberties Union ("ACLU") followed ICE officers, apparently from the courthouse, and videotaped the incident.[3]

---

[3] The September 18, 2017 video of the incident, *see* ECF 10 at 3, is referenced in Plaintiff's Complaint, ECF 1 at 4.

Plaintiff's Complaint notes that the ACLU observer asked officers in a loud voice: "Do you have a warrant? Are you ICE? Do you have a warrant for his arrest?" ECF 1 at 4. Immediately after the incident, it appears that Plaintiff pursued an aggressive media strategy to provide the public with information about the case, and the above-referenced videotape was disseminated to the media. *See, e.g.*, ECF 48-1 at 4 (noting that Plaintiff "spoke to many people about the incident" including media outlets and the Oregon Legislature). This resulted in media outlets, public interest organizations, and other entities directing inquiries and document requests to the Agency. ECF 47 at 6. In fact, the very email thread cited by Plaintiff shows that ICE officials were aware that this incident was attracting local and national media attention. ECF 43 at 14–17. ICE officials even lamented that the incident was turning into "the crisis du jour." *Id.* at 14; *see also id.* (documenting that one of the media articles forwarded to ICE officials involved calls to investigate the Agency over the incident). Thus, there is plenty of evidence that Agency officials were on alert and actively monitoring the situation. ECF 43 at 15 (noting that an Agency official asked "[w]hich entity would be responsible for investigating such complaints if they were lodged?"). Considering that a letter merely threatening litigation is sufficient to put a potential party on notice that litigation could be anticipated, *MeadWestvaco Corp. v. Rexam, PLC*, No. 1:10CV511 GBL/TRJ, 2011 WL 2938456, at *3 (E.D. Va. July 18, 2011), it would be myopic to assume that other adversarial tactics could not similarly suffice. One only has to watch the video of the incident to see that it was clear from the very outset that litigation was imminent.

While Plaintiff suggests that the memoranda should be treated as if they were routine incident reports, ECF 42 at 6, the documents appear to have been created for a particular litigation purpose—informing high-level Agency officials about the incident. ECF 43 at 4–7. It is understandable that an Agency would need to compile the relevant facts in order to prepare for

an anticipated legal action. *See Martin v. Naval Crim. Investigative Serv.*, No. 10cv1879 WQH (NLS), 2012 WL 6553408, at *6 (S.D. Cal. Dec. 14, 2012) (noting that "a compilation of any facts that would reveal those [legal] strategies or impressions, is entitled to work product immunity"). This comports with Defendant's argument that ICE supervisors requested the officer memoranda be drafted precisely because of Plaintiff's public litigation of the case. *See* ECF 47 at 6. Plaintiff's argument suffers because he asks this Court to construe the scope of the protection too narrowly. *Richey*, 632 F.3d at 568 ("In applying the 'because of' standard, courts must consider the totality of the circumstances and determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." (internal quotation marks and citation omitted)). Accordingly, this Court finds that the draft memoranda (RFP No. 1) are subject to work-product protection.

This rationale is also applicable to the texts, emails, and other communications between Agency officials (RFP No. 2). Considering that these documents involve post-incident communications with high-level officials within the Agency, and not the actual officers themselves, ECF 47 at 7, it is likely that the potential of litigation was a subject of discussion. Like the drafts, these communications seem to have been in response to a litigation situation that was quickly evolving. As a result, this Court finds that the work-product protection also applies to the intra-Agency communications about the stop (RFP No. 2).

Plaintiff urges this Court to compel production of the documents even if it finds that the work product doctrine applies because he has a substantial need for the materials, and cannot, without undue hardship obtain their substantial equivalent by any other means. Plaintiff speculates that these documents could provide information about central factual questions concerning the nature of the stop and the rationale behind it. ECF 42 at 9. But Plaintiff has not

adequately explained how this translates into a substantial need for the materials. For example, it is not clear how Plaintiff's efforts to prove the elements of his false arrest and imprisonment claim would be furthered by working drafts and after-the-fact communications.[4] ECF 47 at 6. Considering that the work product doctrine's primary function is to "prevent exploitation of a party's efforts in preparing for litigation," this Court cannot allow Plaintiff to potentially peer into the Agency's litigation preparation and strategy without a more significant showing of need. *See Admiral Ins. Co.,* 881 F.2d at 1494.

Nevertheless, this Court disagrees with Defendant's contention that documents related to third-party communications with media outlets, politicians, and community organizations (RFP No. 5) are not discoverable under the work product doctrine. ECF 42 at 9. Defendant has failed to explain how Agency communications with these outside entities would qualify for work-product protection. While third-party communications can constitute work product under certain circumstances, in this case, these outside entities are not party representatives in this action. *See* Fed. R. Civ. P. 26(b)(3)(A). Further, there is no evidence that these outside entities were somehow acting at the behest of the Agency. *See Cal. Inst. of Tech. v. Hughes Commc'ns, Inc.*, No. 2:13-cv-07245-MRP-JEM, 2015 WL 11120674, at *2 (C.D. Cal. Feb. 24, 2015). Thus, Defendant cannot prevent disclosure of documents responsive to RFP No. 5 under the work-product doctrine alone.

---

[4] Plaintiff's claim for false arrest requires him to prove that (1) the officers confined him, (2) the officers intended to confine him, (3) Plaintiff was aware of the confinement, and (4) the confinement was unlawful. *Fossen v. Clackamas Cnty.*, 271 Or. App. 842, 847 (2015). Defendant's point is well-taken that these elements must have been satisfied at the time of the stop. ECF 47 at 6–7. Unfinished drafts prepared after the incident and post-incident communications do not tend to prove those elements.

PAGE 9 – OPINION AND ORDER

**B. RFP Nos. 1 and 2 Are Protected Under the Deliberative Process Privilege**

This Court finds that the deliberative process privilege also protects from disclosure documents responsive to RFP Nos. 1 and 2.[5] In order to enjoy the protections of the privilege, a document must be both "predecisional" and "deliberative." *Nat'l Wildlife Fed'n*, 861 F.2d at 1117. With respect to the predecisional prong, Plaintiff claims that the privilege fails because the officers' statements were not "prepared in order to assist an agency decisionmaker in arriving at his decision." *See* ECF 42 at 6 (internal quotation marks omitted) (quoting *Assembly of State of Cal.*, 968 F.2d at 921). But as this Court already discussed with respect to the applicability of the work-product doctrine, the memoranda and communications that were created and exchanged in the aftermath of the incident did not occur in a vacuum. Rather, the record shows that this incident generated widespread interest in law enforcement practices within the Agency. For example, on September 20, 2017, NBC Latino submitted a press inquiry to the Agency asking whether there was "any official policy regarding racial profiling?" ECF 43 at 17.

Thus, the draft memoranda and the communications all appear to have been created in service of assisting the Agency in crafting a media response. Plaintiff argues that the privilege does not extend to documents that were created in order to prepare an Agency's public

---

[5] Under the Freedom of Information Act ("FOIA"), a federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in 5 U.S.C. § 552(b). *See United States v. Weber Aircraft Corp.*, 465 U.S. 792, 793–94 (1984). Many courts have noted that 5 U.S.C. § 552(b)(5) embodies the deliberative process privilege. *E.g. Carter v. United States DOC*, 307 F.3d 1084, 1088–89 (9th Cir. 2002). "Federal courts regularly apply FOIA precedent when interpreting the deliberative process privilege." *Nw. Env't Advocates v. U.S. E.P.A.*, No. 05–1876–HA, 2009 WL 349732, at *3 n.1 (D. Or. Feb. 11, 2009), even in cases that do not involve FOIA claims, *see, e.g.*, *Warner Commc'ns Inc.*, 742 F.2d at 1161 (citing FOIA Exemption 5 case law in analysis of non-FOIA deliberative process privilege claims). The exemptions are permissive, and an agency may voluntarily release information that it would be permitted to withhold under the FOIA exemptions. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 290–94 (1979).

communications.[6] ECF 42 at 7. But district courts within this Circuit and beyond have adopted a patchwork of different approaches which have included protections for agencies in the process of formulating responses to media and other entities. *See, e.g.*, *P.W. Arms, Inc. v. United States*, No. C15-1990-JCC, 2017 WL 319250, at *4 (W.D. Wash. January 23, 2017) ("[C]ommunications discussing how to respond to Congressional and media inquiries, even when postdecisional in time, have been found to be 'generated as part of a continuous process of agency decision making, viz., how to respond to on-going inquiries' and properly withheld as predecisional." (quoting *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208 (D.D.C. 2010)).

While the Ninth Circuit has not specifically opined on the applicability of the privilege to media inquiries, it has generally eschewed wooden and inflexible formulations of the privilege. *See, e.g.*, *Nat'l Wildlife Fed'n*, 861 F.2d at 1119–20; *see also id.* at 1118 (explaining that "a better analytical tool than merely determining whether the material itself was essentially deliberative or factual" is "whether the document in question is a part of the deliberative process" and rejecting the argument that a document "must itself contain recommendations on law or policy to qualify as 'deliberative'"). As a result, this Court finds no reason to limit the scope of what may be deemed predecisional to just those agency decision-making processes that involve conventional or explicit policymaking. *See P.W. Arms, Inc.*, 2017 WL 319250, at *5 (holding that the privilege log entries "describe predecisional documents and text that were

---

[6] Plaintiff also argues that the draft memoranda contain factual matter subject to discovery. ECF 42 at 6. Plaintiff correctly notes that pure factual matters are not subject to the deliberative process privilege. *United States v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000). But when—as here—factual information would appear to be thoroughly integrated into deliberative material, disclosure would allow Plaintiff to probe into the thought processes of the Agency. *Transgender L. Ctr. v. U.S. Immigr. & Customs Enf't*, No. 19-cv-03032-SK, 2020 WL 7382113, at *12 (N.D. Cal. Nov. 24, 2020).

generated as part of a continuous process to respond to on going inquires from Congress about the agency action" and that "[r]eleasing the redacted information could disclose [the Agency's] deliberative process and diminish the candor of debate that the (b)(5) exception is meant to protect"); *see also Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 52 (D.D.C. 2019) ("Because these kinds of public communications all require the 'formulation [and] exercise of agency policy-oriented judgment,' they fall within the scope of the deliberative process privilege." (quoting *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 330 F. Supp. 3d 373, 382 (D.D.C. 2018)).

The documents also satisfy the deliberative prong of the test because disclosure would discourage candid discussion and undermine the Agency's ability to perform its functions. *Assembly of State of Cal.*, 968 F.2d at 920. This Court is cognizant of the close relationship between this specific incident and the Agency's larger enforcement policies at issue. *See, e.g.*, ECF 43 at 20 (noting that when officers arrived at the scene, "legal Observers" were filming their arrival and taking pictures). It is especially true in cases involving public controversy that Agencies should not operate in a "fishbowl" where they would be forced to sterilize their discussions solely to avoid future criticism. *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, No. CV 14-1667 PSG (Cwx), 2015 WL 3606419, at *7 (C.D. Cal. Feb. 4, 2015). Because the draft memoranda and intra-Agency communications appear to be both predecisional and integral to the Agency's deliberative process, they are subject to the privilege.

While the deliberative process is a qualified one, Plaintiff has not shown that his need overrides the government's interest in non-disclosure. *Karnoski v. Trump*, 926 F.3d 1180, 1206 (9th Cir. 2019); *Warner Commc'ns Inc.*, 742 F.2d at 1161. Courts balance four factors in determining whether this exception applies: "1) the relevance of the evidence; 2) the availability

of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Warner Commc'ns Inc.*, 742 F.2d at 1161.

Considering all of these factors, this Court notes that only the third factor weighs significantly in Plaintiff's favor since the government is a party in this action. *See Toomey v. Arizona*, No. CV 19-0035-TUC-RM (LAB), 2021 WL 1545990, at *3 (D. Ariz. Apr. 20, 2021) ("Where the government is itself a defendant, the reason for the privilege evaporates."). Plaintiff, otherwise, has not provided a compelling argument why the relevance of these post-incident documents or their purported unavailability should overcome the privilege. Even if the documents do not contain explicit policy recommendations, this does not doom Defendant's claim. As this Court has already explained, responses to media inquiries can form a basis for the privilege's invocation. Considering these factors together, this Court finds that Plaintiff's purported need does not override Defendant's interest in non-disclosure.

While this Court finds that the privilege applies to RFP Nos. 1 and 2, Defendant has failed to explain how communications with outside entities like media outlets and community organizations could be considered either predecisional or part of the Agency's deliberative process. *See Assembly of State of Cal.*, 968 F.2d at 920. By its very nature, the privilege is meant to protect internal debate within the Agency. *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 490 (9th Cir. 2018) ("The deliberative process privilege protects the internal decision making processes of government agencies."). This Court would be undermining the very principle driving the privilege if it were to extend the doctrine to external communications with entities that bear no connection to the Agency's policy-making processes such as media outlets, politicians, and community organizations. Accordingly, this Court finds

that the privilege alone does not prevent disclosure of documents responsive to RFP No. 5.

**C. RFP No. 5 Is Not Discoverable Under Fed. R. Civ. P. 26(b)(1)**

While the protections of the work-product doctrine and deliberative process privilege do not apply to RFP No. 5, this Court must still evaluate whether disclosure of these third-party communications is nevertheless prohibited under Rule 26. This Court finds that Plaintiff is not entitled to discovery of documents responsive to RFP No. 5 because the requested information lacks relevance and is not proportional to the needs of his case.[7] Plaintiff has not adequately explained how post-incident communications with third parties outside of the Agency have any relevance to his claim. *See* Fed. R. Civ. P. 26(b)(1). As this Court has already discussed in the context of RFP No. 2, post-incident communications do not tend to prove the elements of Plaintiff's cause of action. This is especially true with respect to RFP No. 5, where the third-party communications sought from media outlets, politicians, and community organizations are even farther removed from information that could be relevant. Plaintiff's explanation that production of these documents could lead to the discovery of "inconsistent accounts" or "incomplete responses to inquiries" is largely speculative. ECF 42 at 9–10.

Although relevance for discovery purposes is defined broadly, it is not without boundaries. *See, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing expeditions." (alteration omitted) (internal quotation marks and citation omitted)). Accordingly, this Court, exercising its "broad discretion in determining relevancy for discovery purposes," finds that documents

---

[7] This Court notes that RFP No. 5 is also overbroad. While the RFP lists specific third-party communications that are of interest—namely, the Agency's communications with media outlets, politicians, and community organizations—it still seeks "all communications with third parties." ECF 42 at 4.

responsive to RFP No. 5 are not discoverable. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

Plaintiff's request is also deficient because he has failed to explain how disclosure would be proportional to the needs of his case. *See* Fed. R. Civ. P. 26(b)(1) (noting that proportionality considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). Reviewing the factors outlined in Rule 26(b)(1), and the parties' briefing, this Court finds that its analysis skews towards Defendant.

Defendant's point is well-taken that production of the documents would be too burdensome because it has no way of searching for post-incident communications exchanged between high-level Agency officials. ECF 47 at 13. This is because these documents often do not contain either Plaintiff's name or the name of the person originally sought by ICE—Arturo Garcia-Ramirez. *Id.* Defendant also notes that the heavily redacted FOIA documents attached to Plaintiff's motion do not provide sufficient information to be able to retrieve the documents. *Id.* ("[D]ocuments produced by a FOIA department within ICE have no relation to the documents available to the U.S. Attorney's Office in the defense of this litigation against the United States."). Further, the speculative nature of the third-party communications makes it uncertain that disclosure could even contribute to resolving the issues here. Because the proposed discovery is neither relevant nor proportional to the needs of the case, this Court concludes that Plaintiff is not entitled to the disclosure of documents responsive to RFP No. 5.

**D. *In Camera* Review**

Plaintiff requests that this Court conduct an *in camera* review of the documents to assess

the validity of the asserted privileges. In *United States v. Zolin*, 491 U.S. 554, 572 (1989), the Supreme Court held that a district court may in some circumstances order an *in camera* review of documents. "To empower the district court to review the disputed materials *in camera*, the party opposing the privilege need only show a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992). But even if the requesting party can make that showing, "the decision whether to conduct the review rests within the discretion of the district court."[8] *Id*. *In camera* review is generally disfavored and a "court should not conduct such a review solely because a party begs it to do so." *Nishika, Ltd. v. Fuji Photo Film Co.*, 181 F.R.D. 465, 467 (D. Nev. 1998).

Here, Plaintiffs have made no such factual showing. For example, in arguing that he is entitled to the draft memoranda, Plaintiff merely notes that the draft memoranda "*may* contain relevant information that the agents' supervisors decided to edit or delete." ECF 42 at 5 (emphasis added). But Plaintiff must show more than a "hunch" that the privileged communications may contain additional facts subject to disclosure. *See Reynolds v. Liberty Mut. Ins. Co.*, No. CV-16-00020-TUC-JGZ, 2017 WL 6415360, at *4 (D. Ariz. May 23, 2017) ("Plaintiff has failed to make the requisite factual showing, instead hinging his argument on a hunch."); *see also Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, No. 2:17-cv-01515 KJM AC, 2019 WL 1178635, *4 (E.D. Cal. 2019) (holding that party failed to meet minimal threshold

---

[8] The exercise of this discretion "is guided by the factors enumerated in *Zolin*." *Grand Jury Investigation*, 974 F.2d at 1075. Under *Zolin*, "[t]he court should make that decision [whether to conduct *in camera* review] in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review [and] the relative importance to the case of the alleged privileged information." 491 U.S. at 572.

PAGE 16 – OPINION AND ORDER

for *in camera* review of redacted material where it argued that most of the redacted information was not privileged because the redactions appeared to be "heavy handed" and "inconsisten[t]"). Accordingly, this Court denies Plaintiff's request for an *in camera* review.

## CONCLUSION

Plaintiff's Motion to Compel Production of Documents, ECF 42, is DENIED. Documents responsive to RFP Nos. 1 and 2 are subject to the work-product doctrine and deliberative process privilege and may be withheld. Documents responsive to RFP No. 5 are not discoverable under Rule 26(b)(1) because they lack relevance and are not proportional to the needs of Plaintiff's case. Plaintiff's request, in the alternative, for an *in camera* review is DENIED.

**IT IS SO ORDERED.**

DATED this 17th day of March, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge